**BRYAN CAVE LEIGHTON PAISNER LLP**
Christopher J. Archibald, California Bar No. 253075
Amelia Alvarez, California Bar No. 310044
1920 Main Street, Suite 1000
Irvine, California 92614-7276
Telephone: (949) 223-7000
Facsimile: (949) 223-7100
E-Mail: christopher.archibald@bclplaw.com
amelia.alvarez@bclplaw.com

**BRYAN CAVE LEIGHTON PAISNER LLP**
Pamela Carroll Calvet, California Bar No. 112612
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200
Email: pccalvet@bclplaw.com

Attorneys for Defendant Saia Motor Freight Line, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MICHAEL MOORE, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

SAIA MOTOR FREIGHT LINE, LLC, a limited liability company; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:24-cv-03156-FLA-E

Hon. Fernando L. Aenlle-Rocha
Courtroom 6B

**DEFENDANT SAIA MOTOR FREIGHT LINE, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS


**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. FACTS ..... 4

- A. Saia's Business Operations and Distinctly Different Non-Exempt Positions ..... 4
- B. Saia Never Instructed or Encouraged PCMs to Use Personal Cell Phones. ..... 5
- C. Saia Provided Drivers with Devices to Navigate and Communicate. ..... 6
- D. There Is No Evidence of Necessary Cell Phone Use by City Drivers. ..... 6
- E. Timekeeping with a Personal Cell Phone Was Never Necessary ..... 7
- F. There Is No Evidence of Any Necessary Cell Phone Expense ..... 8
- G. Saia's Uniform and Footwear Requirements ..... 8
- H. Saia Provided Allotments to Obtain All Required Items. ..... 9
- I. There Is No Evidence of Any Necessary PCM Apparel or Footwear Expense. ..... 10
- J. Plaintiff Relies on Unauthenticated and Inapplicable Policies. ..... 12
- K. PCMs Reject Plaintiff's Claims. ..... 12

III. LEGAL STANDARDS ..... 13

- A. Establishing a Labor Code Section 2802 Violation ..... 13
- B. Article III Standing ..... 13
- C. Plaintiff's Rule 23 Burden ..... 14

IV. LEGAL ARGUMENT ..... 15

- A. Plaintiff Lacks Article III Standing for His Uniform Claim. ..... 15
- B. Plaintiff's Uniform Claim Fails to Satisfy Rule 23 ..... 15
  - i. Plaintiff Fails to Establish Commonality or Predominance. ..... 15
  - ii. Individual Issues Predominate. ..... 16
    - 1. Identifying Who Purportedly Incurred an Expense 16


Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

2. Determining Whether Expenditures Were Necessary 16
3. Determining Saia's Knowledge 17
C. Plaintiff's Cell Phone Claim Fails to Satisfy Rule 23. ........................ 17
i. Plaintiff Fails to Establish Typicality. ........................................ 17
ii. Plaintiff Fails to Establish Commonality or Predominance. ...... 18
iii. Individual Issues Predominate. .................................................. 19
1. Identifying Who Purportedly Used a Cell Phone 19
2. Determining Whether Cell Phone Use Was Necessary 19
3. Determining Saia's Knowledge 22
V. CONCLUSION ............................................................................... 22


Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarado v. Wal-Mart Assocs., Inc.*,
2021 WL 6104234 (C.D. Cal. Nov. 3, 2021) .......... 21

*Briggs v. OS Rest. Servs., LLC*,
2020 WL 6260001 (C.D. Cal. Aug. 26, 2020) .......... 21

*Dugan v. Ashley Furniture Indus., Inc.*,
2016 WL 9173459 (C.D. Cal. Nov. 29, 2016) .......... 20

*Ellis v. Costco Wholesale Corp.*,
657 F. 3d 970 (9th Cir. 2011) .......... 14

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
42 Cal. 4th 554 (2007) .......... 13

*Grissom v. Vons Cos., Inc.*,
1 Cal.App.4th 52 (1991) .......... 13

*Hamilton v. Knight Transp., Inc.*,
2025 WL 1576803 (C.D. Cal. June 3, 2025) .......... 20

*Hardwick v. Hoovestol, Inc.*,
2022 WL 4596592 (C.D. Cal. Sept. 12, 2022) .......... 19, 20

*Hernandez v. Wal-Mart Assocs., Inc.*,
2024 WL 4131833 (C.D. Cal. Mar. 28, 2024) .......... 14, 20

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) .......... 14, 15

*Moore v. Addus Healthcare, Inc.*,
2021 WL 1022875 (N.D. Cal. Mar. 17, 2021) .......... 17, 18

*Nicholas Laboratories, LLC v. Chen*,
199 Cal.App.4th 1240 (2011) .......... 13

*Pavloff v. Cardinal Logistics Management Corp.*,
2020 WL 6821072 (C.D. Cal. Oct. 7, 2020) .......... 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 14

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

*Uschold v. Carriage Servs., Inc.*,
2020 WL 1466172 (N.D. Cal. Mar. 6, 2020) ........ 21

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 14, 15

*Wilson v. La Jolla Grp.*,
61 Cal.App.5th 897 (2021) ........ 13

**Statutes**

Labor Code § 2802 ........ 16, 19

**Other Authorities**

Fed. R. Civ. P. 23 ........ *passim*

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Michael Moore's ("Plaintiff") Motion for Class Certification ("Motion") contains nothing other than purported evidence of his individual claims, which are disputed and require assessment of numerous individual issues. Those individual issues are compounded and exponentially increased when spread across a putative class of hundreds of employees in all of Defendant Saia Motor Freight Line, LLC's ("Saia") non-exempt positions in 15 terminals across the State of California from March 11, 2020 to the present.[1]

***Uniforms:***

Plaintiff lacks Article III standing to assert a uniform expense claim because he never incurred any uniform expense during the Relevant Period.

Moreover, there is no evidence of any purportedly unlawful class wide policy. Instead, during the entire Relevant Period, Saia provided PCMs who are required to wear a uniform (not all are) with an allotment with which to obtain items through Cintas, Saia's uniform vendor. Contrary to Plaintiff's unsupported claim that provisions of an unauthenticated 2014 City Driver Manual were in effect during the Relevant Period, allotment amounts up to a certain amount *have carried over* during the entire Relevant Period and there have been *no deductions from wages for uniform items*.[2]

---

1 As used herein, the putative class members are referred to as "PCMs" and the time period from March 11, 2020 through the present is referred to as the "Relevant Period."

2 Plaintiff attempts to remedy the failure to establish which policies were in effect during the Relevant Period by pointing to the fact that Saia produced the manuals in response to written discovery requesting manuals in effect between March 11, 2020 and February 14, 2025. Production of a manual was required if *any portion* of the manual applied during the class period. (Evidentiary Packet ("EP") Ex. B [Declaration of Amelia Alvarez], ¶¶ 26-27; EP Exs. 42-43 at Request for

Continued on Next Page

Consistent with the foregoing, Plaintiff's Motion does not theorize, let alone identify, with supporting evidence, how any of the following material individual questions can be answered in one stroke with respect to his uniform reimbursement claim: (1) which PCMs, if any, incurred an expense for any uniform item?; (2) whether any uniform expense, if any was ever incurred, was necessary considering Saia provided an allotment, which refreshed twice per year, and considering some PCMs are not required to wear any specific apparel item at work; and (3) whether Saia was aware of any purportedly necessary uniform expense incurred.

***Cell Phones:***

Likewise, there is no evidence of any purportedly unlawful class wide cell phone policy. Saia's Mobile Device Policy instructs employees to *avoid* using their personal cell phones for any work purpose.

With respect to cell phone use for navigation and communicating with dispatch, customers, and supervisors, the dockworkers and clerical staff work at the terminal. They have no need for navigation. Dockworkers have no need to communicate with anyone from away from the terminal, and clerical staff who are required to communicate with anyone away from the terminal do so using Saia-provided landlines for phone calls.

During the Relevant Period, Saia provided drivers with devices to use for navigation and communicating with dispatch, customers, and supervisors. Plaintiff admits this, but claims that, "Drivers regularly, if not exclusively, used their

---

Production ("RFP") No. 5 and response). Not every provision of a manual from 2014, long predating the Relevant Period, was applicable during the Relevant Period.

Similarly, Plaintiff complains that Saia did not produce "manuals" for positions other than City Driver. Plaintiff submits no evidence that the purported "manuals" that Saia allegedly did not produce even exist. Instead, Plaintiff's counsel erroneously assumes that just because Saia has a City Driver manual, it must have a manual for every other non-exempt position.

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

personal cell phones…" (Pl. Mot. at p. 9, lines 1-2). Plaintiff cites to no evidence to support that contention. It is merely an unsupported, erroneous statement by Plaintiff's lawyers. Plaintiff only submits evidence that *he*, *individually*, purportedly had difficulties with the Saia-provided devices, so he used his cell phone.

Moreover, Ed Zepeda, the Terminal Manager at only one of Saia's 15 California terminals, never instructed any City Drivers to use their personal cell phones instead of the Saia-provided devices. His denial is consistent with the numerous PCM declarations contradicting Plaintiff's self-serving testimony that Saia-provided devices were inadequate.

With respect to cell phone use for clocking in and out, Plaintiff only submits evidence that *he* used his cell phone to clock in and out. There is no evidence that Saia *required* PCMs to clock in and out using a personal cell phone or that anyone other than Plaintiff ever used a personal cell phone to clock in and out. Saia never required PCMs to use their cell phones to clock in and out. Numerous PCM declarations confirm this to be true.

Consistent with the foregoing, Plaintiff's Motion does not even theorize, let alone identify, with supporting evidence, how any of the following material individual questions can be answered in one stroke with respect to his cell phone reimbursement claim: (1) which PCMs, if any, were required to even own a personal cell phone?; (2) which PCMs, if any, were required to use a personal cell phone for work?; (3) which PCMs, if any, actually used a personal cell phone for work?; (4) whether, if any PCM used a personal cell phone for work, it was reasonable and necessary to do so considering that: (a) most non-exempt positions do not have any job duties that can or must be performed using a personal cell phone (i.e. dock worker and clerical staff); and (b) Saia provided City Drivers with devices to use for navigation and communication; and (5) whether Saia was aware of any purportedly reasonable and necessary cell phone use, if any, by PCMs?

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

In contrast to Plaintiff's lack of any evidence of any unlawful class wide policy pertaining to cell phone use or uniforms, 38 PCMs in various job categories squarely and directly dispute Plaintiff's claims. Plaintiff's failure to submit evidence of any of the foregoing, combined with 38 PCM declarations contesting Plaintiff's claims,[3] firmly establishes that common questions of law or fact do not predominate over individual issues. Therefore, Saia respectfully requests that the Court deny Plaintiff's Motion *with prejudice*.

## II. FACTS

### A. Saia's Business Operations and Distinctly Different Non-Exempt Positions

Saia is an interstate less than truckload ("LTL") common carrier, transporting general commodities operating in terminals throughout the United States, including 15 terminals within California. (EP Ex. F [Declaration of Michael Ewing], ¶ 4). As an LTL carrier, Saia consolidates freight from multiple shippers into a single truckload. (*Id.*) In its simplest form, Line Drivers (sometimes also referred to as "Line Haul Drivers") move the freight across the country between terminals at the direction of centralized dispatch, dockworkers load and unload freight, and City Drivers pick up and deliver freight to local customers. (*Id.*, ¶ 5). Saia's individual terminals vary significantly in size, facilities, staffing, management, operating hours, freight and other factors. (*Id.*)

In California, Saia's non-exempt employees hold various positions, which include the positions of City Driver, Line Haul Driver, Mechanic, clerical staff, and dockworker, each with distinct job duties. (EP Ex. F, ¶ 6). Line Haul Drivers operate tractor trailers over long distances to deliver freight. (*Id.*) Mechanics

---

3 Plaintiff submits zero PCM declarations to support his claims even though he visited other terminals over 50 times, interacted with other employees for up to 3 hours, and interacted with *everybody* at the Orange Terminal. (Pl. Mot. at p. 12, lines 23-28).

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

maintain, diagnose, and repair trailers. (*Id*.) Dockworkers sort and handle freight in and out of trucks and operate forklift and pallet jacks to load and unload freight. (*Id*.) Office staff provide clerical support. (*Id*.)

City Drivers are either the beginning or end of the interstate commerce flow of freight. (EP Ex. F, ¶ 7). City Drivers deliver freight within a prescribed geographic area of a 100-mile radius of the terminal and pick up freight from customers to begin the flow of interstate commerce. (*Id*.) During the entire Relevant Period, Saia provided City Drivers with devices for electronic logging of hours of service and phones/handhelds designed around the pick-up and delivery responsibilities of a City Driver that allowed for phone calls, messaging with persons monitoring the terminal dispatch board, photos and navigation, including Google maps, and connection to the Saia website. (*Id*., ¶ 8). These devices are designed specifically for use in the freight transportation industry. (*Id*.) The City Drivers start and end their workday at the terminal. (*Id*., ¶ 9).

**B. <u>Saia Never Instructed or Encouraged PCMs to Use Personal Cell Phones.</u>**

Saia's policy specifically provides that use of personal phones for business purposes should be *avoided*. (EP Ex. C [Declaration of Chris McKinnish], ¶ 10; EP Ex. 46; EP Ex. G [Declaration of Matthew Powers], ¶ 7). Unlike City Drivers, other hourly employees such as dockworkers and clerical staff do not drive and are not in communication with the terminal dispatch board; dockworkers do not communicate with customers; and clerical staff communicate with customers using Saia-provided landline telephones and computers, so there is zero use for a cell phone. (EP Ex. F, ¶¶ 11-13); Compendium of Citations to Evidence ("CCE"), ¶ 14). At no time was Plaintiff or any other employee at the Orange terminal where he worked, or any employee at any other terminal instructed, encouraged, or required to use their own personal cell phone for any work purposes. (EP Ex. E [Declaration of Edward Zepeda], ¶ 5; EP Ex. F, ¶ 14; CCE, ¶ 12).

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

### C. Saia Provided Drivers with Devices to Navigate and Communicate.

During the period from March 11, 2020 until on or about the Spring of 2021, Saia provided California City Drivers with a Motorola MC67, which was designed for commercial use, for use during their shifts. (EP Ex. G, ¶ 3). The MC67 provided access to Windows mapping and navigation. (*Id.*) In or around Spring of 2021, Saia transitioned to a Zebra T57, a handheld device that is Android based. (*Id.*, ¶ 4). This device has various navigation tools, including access to Google Maps and the RouteMax application. (*Id.*)

During the entire Relevant Period, the Saia-provided devices used by City Drivers allowed for all necessary communication between City Drivers and terminal dispatch, supervisors, and customers. (EP Ex. C, ¶¶ 4-9; EP Ex. 45; EP Ex. E, ¶ 4; EP Ex. G, ¶¶ 9-10; EP Ex. F, ¶ 8). All of the Saia-provided devices permitted City Drivers to make and accept telephone calls, and to instant message with terminal dispatchers. (EP Ex. C, ¶¶ 4-9; EP Ex. 45; EP Ex. E, ¶ 4; EP Ex. F, ¶ 8; EP Ex. G, ¶ 10).

Plaintiff in fact used his Saia-provided device to communicate with terminal dispatch during work hours, including for scheduling breaks and organizing deliveries and pick-ups. (EP Ex. C, ¶¶ 4-9, Ex. 45).

### D. There Is No Evidence of Necessary Cell Phone Use by City Drivers.

It is not necessary for City Drivers to use a personal cell phone for navigation or communication. At least one City Driver does not even have a cell phone. (EP Ex. 22 [Declaration of Bernardo Segovia], ¶¶ 7-10). Numerous City Drivers never used their personal cell phones for navigation. (CCE, ¶ 2). Other City Drivers use their personal cell phones instead of the Saia-provided devices for navigation because it is their personal preference. (CCE, ¶ 3). These personal preference reasons include: preferring to use street view to navigate, cross-referencing multiple navigational tools, preferring the maps application on their phone or personal device, and preferring to double check the route on a second

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

device. (CCE, ¶¶ 3-4). Similarly, numerous PCMs in multiple job categories, including City Drivers like Plaintiff, never used their personal cell phones to communicate with dispatch, customers, or their supervisor. (CCE, ¶ 6). PCMs who did use their personal cell phones for these purposes only did so because it was their personal preference, not because it was necessary. (CCE, ¶ 7).

### E. Timekeeping with a Personal Cell Phone Was Never Necessary.

Saia never required employees to use their personal cell phone to clock in or out. (EP Ex. G, ¶ 11). In response to the COVID-19 pandemic, Saia's different terminal managers had to make their own judgment calls as to what worked best for their terminal. (EP Ex. E, ¶ 9; EP Ex. F, ¶ 29). For example, in or around the middle of March of 2020, some, but not all, of the Orange terminal time clocks were temporarily turned off. (EP Ex. E, ¶ 9). At Orange, there was a time clock on the dock that was not disconnected and remained available for use at all times during the Relevant Period. (*Id.*) Another time clock upstairs was disconnected, but within a few weeks, it was brought downstairs near the restroom and break area and wired into the wall. (*Id.*) At the Orange terminal, in addition to still having time clocks available, managers/supervisors could clock employees in and out using their access to the Employee Management System ("EMS") or the Citrix time clock application on the manager/supervisors' Saia provided computer. (*Id.*) Clerical workers were given access to Citrix application time clock on their Saia provided devices to clock themselves in and out. (*Id.*) There were plenty of options for Orange employees and employees at other terminals other than using their personal cell phone, including using the operational time clocks, telling a dock supervisor to clock the driver in on the supervisor's computer, using a handheld to call a supervisor, texting dispatch on the handheld, or asking a supervisor to clock them in on the EMC. (*Id.*, ¶ 10; EP Ex. F, ¶¶ 29-30).

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

**F. There Is No Evidence of Any Necessary Cell Phone Expense.**

Plaintiff submits no documentary evidence in support of his Motion to establish that *he* incurred any cell phone expenses. There is also no evidence that anyone, other than Plaintiff, allegedly had to use their own personal cell phone for navigation, clocking in or out, or communicating for work purposes. Contrary to Plaintiff's false claim, Plaintiff never requested to be reimbursed for any purported personal cell phone use. (EP Ex. E, ¶ 6).

**G. Saia's Uniform and Footwear Requirements**

During the Relevant Period, Saia maintained a dress code requirement for some of its employees, which varied depending on an employee's position. (EP Ex. F, ¶ 15). Some non-exempt employees, such as clerical staff, are not required to wear any specific colors, logos, or footwear. (*Id.*, ¶¶ 17, 20).

Part-time dockworkers are not required to wear any specific clothing and are only required to wear steel-toed shoes that may be of any style or brand. (EP Ex. F, ¶ 23). Many wear steel-toed shoes that they wear at their other jobs that they are either going to or coming from. (*Id.*)

Full-time dockworkers are required to wear steel-toed shoes and a Saia logo top, but the top requirement is not strictly enforced. (EP Ex. F, ¶ 24).

Line haul drivers are required to wear a Saia logo top and steel-toed shoes, but may wear any bottoms, including jeans. (EP Ex. F, ¶ 22).

Mechanics are provided with Saia uniforms and must wear steel-toed shoes. (EP Ex. F, ¶ 20). This is because, unlike other positions, Mechanics need to wear a specific uniform and do not have the option to choose among various compliant alternatives, like City Drivers and Line Drivers. (*Id.*)

City Drivers are required to wear a top with a Saia logo, any navy pants or shorts (other than jeans), and black steel-toed shoes. (EP Ex. F, ¶ 19). City Drivers are also supposed to wear a belt, but this is not strictly enforced. (*Id.*) Jackets and hats are optional. (*Id.*) If a jacket is worn, a City Driver can wear one with a Saia

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

logo on it or any plain navy jacket. (*Id*.) If a hat is worn, it must have a Saia logo. (*Id*.)

**H. <u>Saia Provided Allotments to Obtain All Required Items.</u>**

During the entire Relevant Period, Saia provided those non-exempt employees required to wear certain apparel items with a position-based allotment with which to obtain such items. (EP Ex. F, ¶¶ 16, 18, 21, 26; EP Ex. H [Declaration of Kelsi Scott], ¶¶ 3-4). Saia has not deducted any wages from any PCM, including Plaintiff, during the Relevant Period for any required apparel item. (EP Ex. D [Declaration of Eileen Pontiff], ¶ 4; EP Ex. F, ¶ 26).

During the entire Relevant Period, the Cintas direct sales arrangement with Saia provided and continues to provide eligible Saia employees with access to an individual Cintas password–protected online account, where they may view a catalogue of items selected by Saia to be made available to employees in specific roles and order the items that they select. (EP Ex. H, ¶ 3). This arrangement provides the position-based allotment of funds to be available for use by eligible employees in their Cintas account at the time the employee begins working in an eligible position. (*Id*.) The allotment is refreshed in the employee's Cintas' account each January 1 and July 1. (*Id*.) During the entire Relevant Period, there has been a position-based carry over amount for unused allotments of funds. (*Id*.; EP Ex. F, ¶ 26).

During the entire Relevant Period the Saia provided position-based allotments and carry over amounts have been as follows:

| JOB Codes/Positions | Allotment Amount | Refresh Date | Max Carry Over Amount | Max Available |
|---|---|---|---|---|
| CITY: City Driver | $150 | July 1 & January 1 | $75 | $225 |
| ROAD: Line Haul/ OTR Driver | $150 | July 1 & January 1 | $75 | $225 |

| | | | | |
|---|---|---|---|---|
| SUPV: Supervisor position | $150 | July 1 & January 1 | $75 | $225 |
| TMGR: Terminal Manager | $150 | July 1 & January 1 | $75 | $225 |
| DKFT: Full-Time Dock Workers | $100 | July 1 & January 1 | $50 | $150 |
| DOCK: Part-Time Dock Workers | $50 | July 1 & January 1 | $25 | $75 |
| TECH: Tech Supervisors | $150 | July 1 & January 1 | $75 | $225 |
| MECH: Technicians | $0 | July 1 & January 1 | $0 | $0 |

Cintas administered each of Saia employee's utilization of the allotment and updates the allotment balance on the individual employee online account. (EP Ex. H, ¶ 4). The eligible employee decides what and when to order. (*Id.*, ¶ 5). The allotment covers the cost of the item, tax, shipping and handling. (*Id.*, ¶ 6). During the entire Relevant Period, Saia eligible employees placed all their orders online directly with Cintas. (*Id.*, ¶ 7). Saia employees are not required to purchase any item from Cintas and may manage their individual account and allotment as they see fit. (*Id.*, ¶ 8). Cintas offers sales on certain items. (*Id.*)

The "MECH; Technicians" refers to the Mechanic position. (EP Ex. H, ¶ 10). Mechanics receive an annual allotment for one pair of workboots. (*Id.*) Different from other positions, Saia provides Mechanics with their specific and distinct uniforms through Cintas rather than permitting them to choose from various compliant items. (EP Ex. F, ¶ 20).

**I. <u>There Is No Evidence of Any Necessary PCM Apparel or Footwear Expense.</u>**

Plaintiff fails to provide any evidence that he or any other PCM incurred any expense related to uniforms during the Relevant Period. Indeed, not even Plaintiff incurred such an expense. Plaintiff's wage statements during the Relevant Period

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

establish that *nothing* was deducted from Plaintiff's wages for uniforms. (Declaration of Kane Moon ("Moon Decl."), Ex. 11; EP Ex. D, ¶ 4).

Plaintiff's deposition testimony also disproves his claim. Plaintiff testified that he wore the same navy pants and steel-toed footwear he obtained while working at Saia for work at the job he began subsequent to his termination at Saia. (EP Ex. B, ¶ 29; EP Ex. 44 [Excerpts from Deposition of Plaintiff Michael Moore] at 38:22-39:3, 39:7-9). Plaintiff's testimony also confirms that Saia did not require specific boots that could not be worn for other jobs in the industry, as he testified that "every job requires for us to drive Class steel-toed boots . . . knowing I was going to be applying for jobs, I always keep boots. I buy them." (EP Ex. 44, at 39:10-19).

Critically, Plaintiff testified that *all* of the items that he ordered during his time at Saia were ordered through Cintas, but Cintas records show that Plaintiff never exceeded his allotment, which means he never paid out of pocket for any items as the allotment covered the cost, including tax, shipping, and handling. (EP Ex. 44 at 136:10-13; EP Ex. H, ¶ 9).

Saia also requested in written discovery any documents showing the date, nature of the business expense, or the amount that Plaintiff spent on any alleged business expenses. (EP Ex. B, ¶ 23; EP Ex. 39 at RFP No. 20). Plaintiff does not have any documents showing any of the foregoing. (EP Ex. B, ¶¶ 24-25; EP Exs. 40-41). Plaintiff also never requested reimbursement for any personal cell phone usage or purchase of any apparel item during the Relevant Period. (EP Ex. E, ¶ 6).

Plaintiff failed to submit a single declaration from any PCM supporting either his cell phone or uniform reimbursement claim, even though Plaintiff testified – and notes in his Motion – that he visited other Saia terminals in California over 50 times, sometimes for up to 3 hours, and talked to *everyone*. (EP Ex. 44 at 60:21-61:23; Pl. Mot. at p. 12, lines 24-27).

### J. Plaintiff Relies on Unauthenticated and Inapplicable Policies.

In support of his Motion, Plaintiff submits several documents that have not been authenticated. Importantly, Plaintiff's Exhibit 7 refers to a City Driver Manual from 2014 to claim that orders exceeding the allotment would be payroll deducted weekly in an amount not to exceed $20.00. (Pl. Mot. at p. 6, lines 3-4; Moon Decl., Ex. 7). However, that document, in addition to not being authenticated, was not in effect during the Relevant Period. (EP Ex. F, ¶ 25). Saia never made any deduction from any wages for uniform items during the Relevant Period. (Moon Decl., Ex. 11; EP Ex. D, ¶ 4).

### K. PCMs Reject Plaintiff's Claims.

PCMs reject Plaintiff's claims. At least one PCM does not even own a cell phone. (EP Ex. 22, ¶¶ 7-10). Numerous PCMs never used their personal cell phones for any work-related purpose. (CCE, ¶ 1). PCMs also confirmed that they have never been instructed, required, or permitted by Saia to use their personal device for work. (CCE, ¶ 12). Numerous PCMs never used their personal cell phones for navigation. (CCE, ¶ 2). PCMs who did use their personal cell phones for navigation only did so because it was their preference, including for the following reasons: they prefer to use street view to navigate, they like cross-referencing multiple navigational tools, they are used to or prefer the maps application on their phone or personal device, and they like to double check the route on a second device. (CCE, ¶¶ 3-4). PCMs also confirmed that they never used their personal cell phones to clock in or out, or to communicate with dispatch, customers, or their supervisor. (CCE, ¶¶ 5-6). PCMs also confirmed that during the entire Relevant Period, the Saia-provided device enabled PCMs to communicate with dispatch, customers, and their supervisors, and those PCMs who did use their personal cell phones for these purposes only did so because it was their preference. (CCE, ¶ 7).

Similarly, PCMs reject Plaintiff's uniform claim. PCMs who have worked

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

in clerical and dockworker roles are not required to wear any specific apparel or uniform for their position. (CCE, ¶ 13). Numerous PCMs declared that they have not exceeded Saia-provided uniform allotment. (CCE, ¶ 8). PCMs declared that they were also able to use the allotment to obtain items that they liked but were not required, which included, but were not limited to: work gloves, jackets, sweaters, belts, rain jackets, beanies, undershirts, safety vests, or other accessories. (CCE, ¶ 9). PCMs also explained that they sometimes purchased more required uniform items than they needed for various personal reasons, which included, but were not limited to: preferring to have a lot of extra shorts in their wardrobe, they prefer to have extra clothing and choose to exceed the allotment though it is not necessary to do so, or they prefer to obtain a new style of jacket because they like it. (CCE, ¶ 10). In addition, PCMs confirmed that Saia provided them with free apparel that they are permitted to wear for work, such as short- and long-sleeve shirts, t-shirts, hats, beanies, and safety jackets. (CCE, ¶ 11).

## III. LEGAL STANDARDS

### A. Establishing a Labor Code Section 2802 Violation

Plaintiff must establish: (1) PCMs *made expenditures*; (2) PCMs incurred expenditures in direct consequence of the discharge of their duties, or obedience to the directions of Saia; (3) the expenditures were *necessary*; and (4) Saia *knew or should have known* that the expenses were incurred. *Nicholas Laboratories, LLC v. Chen*, 199 Cal.App.4th 1240, 1249 (2011); *Wilson v. La Jolla Grp.*, 61 Cal.App.5th 897, 919 (2021). Whether an expense is "necessary" depends on "the reasonableness of the employee's choices." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007). "What was reasonable under the circumstances," is an inherently fact-specific question. *Grissom v. Vons Cos., Inc.*, 1 Cal.App.4th 52, 58 (1991).

### B. Article III Standing

A class representative must have Article III standing, meaning they "must

have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

**C. <u>Plaintiff's Rule 23 Burden</u>**

Federal Rule of Civil Procedure 23 ("Rule 23") "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A moving party must "affirmatively demonstrate his compliance with the Rule - that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. (emphasis in original).

Pertinent here, a party seeking class certification must establish that: (1) the plaintiff's claims are *typical* of the claims of the class; (2) there are *common* questions of law or fact common to the class; and (3) questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members. *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 979 (9th Cir. 2011); Fed. R. Civ. P. 23(a).

Under Rule 23(a)(2), the moving party must "demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 350. "This does not mean merely that they have all suffered a violation of the same provision of law." *Id*. Instead, the moving party must show that class members' "claims . . . depend upon a common contention ... [such] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

The predominance requirement of Rule 23(b)(3) is "far more demanding" and requires "a heightened showing that facts and issues common to the class predominate over any individual issues that may be present." *Hernandez v. Wal-*

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

*Mart Assocs., Inc.*, 2024 WL 4131833, at *2 (C.D. Cal. Mar. 28, 2024).

## IV. LEGAL ARGUMENT

### A. Plaintiff Lacks Article III Standing for His Uniform Claim.

Plaintiff must establish that he incurred a reasonable and necessary uniform expense before the court may consider whether the class should be certified. *Lierboe*, 350 F.3d at 1022.

Plaintiff submits zero evidence establishing any of the elements of his individual uniform reimbursement claim. Indeed, there is no evidence regarding: (1) which items Plaintiff allegedly purchased; (2) when Plaintiff purchased the items; (3) the cost of the items; (4) the necessity of the purported purchase; or (5) Saia's knowledge regarding the alleged purchase. *See supra*, Section II.I.

Therefore, because Plaintiff never incurred a uniform expense during the Relevant Period and lacks standing, class certification must be denied on that basis alone.

### B. Plaintiff's Uniform Claim Fails to Satisfy Rule 23

#### i. Plaintiff Fails to Establish Commonality or Predominance.

It was Plaintiff's burden to identify the common questions of law or fact and establish, with evidence, how the truth or falsity of those common questions will resolve an issue that is central to the validity of each one of the claims in one stroke. *Dukes*, 564 U.S. at 350.

Plaintiff's Motion only establishes that some PCMs were required to wear a uniform, what those uniform items were, and that Saia provided an allotment to those PCMs to obtain uniform items. He claims that the "common contention" is that Saia "required Unreimbursed Uniform Expenses Subclass Members to pay for uniform expenses that exceeded their respective allotments, without reimbursing such employees for these expenses." (Pl. Mot. p. 16, lines 9-13). Plaintiff's purported "common contention" fails to address any of the elements required to

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

establish a violation of Labor Code section 2802 or how such elements can be established through common proof.

Plaintiff claims that predominance is established because "All Subclass members have the same potential legal remedies: expense reimbursements." (Pl. Mot. at p. 20, lines 14-15). That conclusory and circular statement does not even approach establishing how the merits of Plaintiff's uniform expense claim could be determined with respect to all PCMs in one stroke. Therefore, Plaintiff failed to make a *prima facie* showing of the Rule 23 requirements with respect to his uniform claim.

**ii. Individual Issues Predominate.**

**1. Identifying *Who* Purportedly Incurred an Expense**

As discussed, Plaintiff cannot even establish that *he* made any uniform expenditures, let alone that any PCMs did so. Plaintiff also has not identified any method by which it can be determined on a class wide basis whether each PCM made any uniform expenditures exceeding the Saia-provided allotment.

**2. Determining Whether Expenditures Were *Necessary***

Plaintiff must establish that, if a PCM made an expenditure, it was necessary. Plaintiff has not identified any method by which that can be determined on a class wide basis. Saia provided PCMs, depending on whether the position required the wear of specific apparel items, with an allotment at the time of hire and every six months during employment to use for obtaining uniform items. (EP Ex. F, ¶¶ 16, 18, 21, 26; EP Ex. H, ¶¶ 3-4). Indeed, numerous PCMs never exceeded the allotment, suggesting that if anyone did, it was unnecessary. (CCE, 8). However, each person's individual reasons would need to be analyzed, and Plaintiff fails to account for that reality.

Not surprisingly, Plaintiff cites to no case in which a court certified a class under analogous facts. Defendant's counsel could not locate any either. Indeed, if a PCM exhausted the Saia-provided allotment, there are numerous individual inquiries

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

pertinent to whether doing so was necessary. For example, why did the employee believe they needed items in addition to what the allotment covered? Was it because the employee preferred to do laundry less often, or some other reason? Whatever the reason, was it reasonable? Why did the employee not wait until receiving the next semi-annual allotment to obtain items? How much time was there between when the employee made a purchase and when the allotment refreshed? What if it was one day? One week? One month? Whatever the amount of time until the allotment refreshed, was it reasonable not to wait until the allotment refreshed? These questions are not exhaustive of the individual inquiries that must be addressed, but Plaintiff's Motion wholly ignores this required analysis altogether.

**3. Determining Saia's *Knowledge***

Third, Plaintiff must establish that, if an employee made a necessary uniform purchase, Saia knew or should have known about it. Plaintiff has not identified any method or proffered any evidence through which that can be determined on a class wide basis.

For all of the foregoing extensive reasons, Plaintiff's request to certify a claim based on uniform expenses should be denied.

**C. <u>Plaintiff's Cell Phone Claim Fails to Satisfy Rule 23.</u>**

**i. Plaintiff Fails to Establish Typicality.**

Typicality requires Plaintiff to establish that his experience was typical of that of the class. *Moore v. Addus Healthcare, Inc.*, 2021 WL 1022875, at *7 (N.D. Cal. Mar. 17, 2021). In *Moore*, Addus provided home care services for individuals that needed assistance caring for themselves. *Id*. *1. The putative class of non-exempt employees included direct care workers, service coordinators, office assistants, and payroll coordinators. *Id*. The plaintiff claimed that the putative class members were required to use their personal cell phones and were not reimbursed. Plaintiff was a service coordinator. Plaintiff did not submit evidence that her experience was typical of the class because she did not establish that members of the class in other

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

positions were exposed to the challenged policies. *Id*. at ** 6-7. To the contrary, Addus' declarations indicated that other non-exempt employees were not exposed to the challenged policies. *Id*. at *7. Therefore, plaintiff failed to establish both typicality and predominance. *Id*. at **7, 12.

Here, Plaintiff did not submit any evidence to establish that anyone other than *he*, ever necessarily used a personal cell phone for any work-related reason. As such, Plaintiff also did not submit any evidence that any non-exempt employee in any position other than City Driver used a cell phone for any work-related reason.

Indeed, Plaintiff claims to have used his cell phone for three things: navigation, communicating while out driving, and clocking in and out. However, dockworkers and clerical workers who complete all of their work at a Saia terminal, do not even use navigation. (EP Ex. F, ¶¶ 11-13). Navigating and communicating while on the road are tasks that, by definition, are specific to drivers like Plaintiff.

With respect to clocking in and out, while all non-exempt employees are required to clock in and out, Plaintiff submits no evidence that it was allegedly necessary for anyone, other than *he*, to use a personal cell phone to clock in and out. Plaintiff's failure to do so is unsurprising as there have always been ways for PCMs to clock in and out without using a cell phone. (EP Ex. E, ¶¶ 9-10; EP Ex. F, ¶¶ 29-30). Indeed, PCMs attest that they have never used their personal cell phone for any work-related reason. (CCE, ¶¶ 1, 2, 5, 6). Some PCMs do not even have personal cell phones. (E.g., EP Ex. 22, ¶¶ 7-10). Therefore, Plaintiff fails to establish that his claims are typical of the claims of the class.

**ii. Plaintiff Fails to Establish Commonality or Predominance.**

Plaintiff claims that the "common contention" is that Saia "required Unreimbursed Cellphone Expenses Subclass Members to use their personal cellphones for work purposes, without reimbursing such employees for any cellphone expenses." (Pl. Mot. p. 16, lines 9-13). Plaintiff's purported "common

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

contention" fails to address any of the elements required to establish a violation of Labor Code section 2802 can be established through common proof.

Plaintiff claims that predominance is established because "All Subclass members have the same potential legal remedies: expense reimbursements." (Pl. Mot. at p. 20, lines 14-15). Again, all that Plaintiff offers is a conclusory statement that does not even approach establishing how, with supporting evidence, the validity of Plaintiff's cell phone expense claim could be determined, with respect to the entire class of all non-exempt employees, in one stroke. Therefore, Plaintiff also failed to make a *prima facie* showing of the Rule 23 requirements.

**iii. Individual Issues Predominate.**

**1. Identifying *Who* Purportedly Used a Cell Phone**

First, Plaintiff must establish that PCMs used their cell phones for work-related purposes. Plaintiff has not identified any method by which it can be determined on a class wide basis whether each PCM used a cell phone for work-related purposes or not.

**2. Determining Whether Cell Phone Use Was *Necessary***

Second, Plaintiff must establish that, if a PCM used a cell phone for work purposes, it was necessary. Plaintiff has not identified any method by which that can be determined on a class wide basis. Nor does Plaintiff cite to any case where a court certified a class under analogous facts. In contrast, *numerous* courts have found that common questions do not exist and/or do not predominate when an employer provides devices to employees. These courts reason that if an employee chose to use their personal cell phone instead of a device provided by an employer, it would require individual inquiries to determine whether it was necessary.

*Hardwick v. Hoovestol, Inc.* is directly on point. 2022 WL 4596592 (C.D. Cal. Sept. 12, 2022). In *Hardwick*, the plaintiff claimed that it was necessary for truck drivers to use their cell phones to communicate with dispatch and managers, for navigation, and to plan or alter his route. *Id*. at *3. The employer provided its

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

drivers with Electronic Logging Devices ("ELD") that could be used to communicate with other drivers, with driver managers, to notify dispatch that there was an accident or breakdown, to request roadside assistance, to navigate routes, and other similar functions. *Id*. at *9. Even though the plaintiff submitted declarations from putative class members stating that they used their personal cell phones for work-related purposes (which Plaintiff has not even done), the plaintiff failed to establish, with class wide proof, *why* drivers used a personal cell phone use rather than the ELD. *Id*. Therefore, here, as in *Hardwick*, "individualized issues predominate with regard to whether personal cellphone use was a necessity such that it gave rise to a company policy." *Id*. at *10.

In *Hamilton v. Knight Transp., Inc.*, another putative class of truck drivers claimed failure to reimburse for the use of their personal cell phones. 2025 WL 1576803, at *10 (C.D. Cal. June 3, 2025). The plaintiffs' claim was based on the premise that there were at least some occasions where cell phone use was required by drivers to accomplish their required duties and therefore cell phone use constituted an expense for which the employer was required to reimburse. *Id*. However, like Saia, Knight provided drivers with devices with which to accomplish their required tassk. *Id*. In *Hamilton*, predominance was lacking because plaintiffs were unable to show the existence of a common policy that violated California law. *Id*. Such a finding is also required here.

There are at least 6 additional recent analogous cases where class certification was denied. *Hernandez v. Wal-Mart Assocs., Inc.*, 2024 WL 4131833, at *1 (C.D. Cal. Mar. 28, 2024) (no predominance because liability hinged on the nature and substance of each such communication); *Pavloff v. Cardinal Logistics Management Corp.*, 2020 WL 6821072, at *9 (C.D. Cal. Oct. 7, 2020) (denying class certification where no written policy required or compelled class members to use their personal cell phones); *Dugan v. Ashley Furniture Indus., Inc.*, 2016 WL 9173459 (C.D. Cal. Nov. 29, 2016) (determination of "necessity" required inquiry into factors such as

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

the motivation of the individual sales associate); *Uschold v. Carriage Servs., Inc.*, Carriage Services, Inc., 2020 WL 1466172, at *7 (N.D. Cal. Mar. 6, 2020) (reasons for using personal cell phones varied, so necessity of the cell phone use was not a common question); *Alvarado v. Wal-Mart Assocs., Inc.*, 2021 WL 6104234, at *1 (C.D. Cal. Nov. 3, 2021) (cell phone tasks could also be performed by using store landlines, walkie-talkies, or other Wal-Mart-provided methods and some putative class members declared that they never used their personal cell phones for work); *Briggs v. OS Rest. Servs., LLC*, 2020 WL 6260001, at *20 (C.D. Cal. Aug. 26, 2020) (class members had the option to download a work app; it was not required).

Here, there is no evidence of any policy requiring non-exempt employees to use personal cell phones for any work-related tasks. Indeed, Saia provided PCMs who were drivers with devices that are specifically designed for the transportation industry that enabled them to navigate, communicate, and perform various other job functions. (CCE, ¶¶ 1-7; EP Ex. G, ¶¶ 9-10; EP Ex. C, ¶¶ 4-9; EP Ex. 45; EP Ex. E, ¶ 4; EP Ex. F, ¶ 8). Moreover, numerous PCMs never used a personal cell phone for any work-related reasons or do not even own a personal cell phone. (CCE ¶¶ 1, 2, 5, 6; EP Ex. 22, ¶¶ 7-10). That suggests that if someone did use a personal cell phone for work purposes, it was not unnecessary (i.e., for their convenience or it was their preference). (CCE, ¶¶ 4, 7). However, each person's individual reasons would need to be analyzed to determine whether it was necessary on each individual occasion. Was it because the employee liked the navigation feature better on their personal phone, or some other reason? Did the employee prefer to communicate using their personal phone? If so, why? If the employee used their cell phone to clock in and out instead of using an available time clock or other available method, why did they do so? Whatever the reasons provided to the foregoing questions, for each PCM on each occasion, was it reasonable and necessary?

//

//

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

**3. Determining Saia's *Knowledge***

Third, Plaintiff must establish that, if an employee necessarily used a personal cell phone for work-related reasons, Saia knew or should have known that the employee did so. Plaintiff has not identified any method or proffered any evidence through which that can be determined on a class wide basis.

## V. <u>CONCLUSION</u>

Plaintiff requests that any denial of his class certification motion be without prejudice. It would be highly prejudicial to Saia to permit Plaintiff to file another class certification motion after fully briefing the class certification issue and having had the benefit of all of Saia's work product in opposition to same. Thus, for the reasons set forth herein, Saia requests that Plaintiff's Motion be denied *with prejudice*.

Dated: June 27, 2025

**BRYAN CAVE LEIGHTON PAISNER LLP**
Christopher J. Archibald
Pamela Carroll Calvet
Amelia Alvarez

By: */s/ Christopher J. Archibald*
Christopher J. Archibald
Attorneys for Defendant
Saia Motor Freight Line, LLC

The undersigned, counsel of record for Saia Motor Freight Line, LLC, certifies that this brief contains 6,965 words, which complies with the word limit set by the Civil Standing Order of the Court, revised on February 1, 2025.

*/s/ Christopher J. Archibald*
Christopher J. Archibald