UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MOORE,<br><br>            Plaintiff,<br><br>    v.<br><br>SAIA MOTOR FREIGHT LINE, LLC, *et al.*,<br><br>            Defendants. | Case No. 2:24-cv-03156-FLA (Ex)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [DKT. 37]** |

# RULING

Before the court is Plaintiff Michael Moore's ("Plaintiff") Motion to Remand ("Motion"). Dkt. 37 ("Mot.").[1] Defendant Saia Motor Freight Line, LLC ("Defendant") opposes the Motion. Dkt. 38 ("Opp'n").

On June 3, 2025, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for June 6, 2025. Dkt. 47; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons stated below, the court DENIES Plaintiff's Motion.

# BACKGROUND

Plaintiff filed a class-action lawsuit against Defendant in the Los Angeles County Superior Court, Case No. 24STCV06059, on March 11, 2024. Dkt. 1-1 ("Compl."). Plaintiff's Complaint asserts Defendant violated the following statutes: (1) Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197 (Failure to Pay Minimum Wages); (2) Cal. Lab. Code §§ 1194 and 1198 (Failure to Pay Overtime Compensation); (3) Cal. Lab. Code §§ 226.7 and 512 (Failure to Provide Meal Periods); (4) Cal. Lab. Code § 226.7 (Failure to Authorize and Permit Rest Breaks); (5) Cal. Lab. Code § 2802 (Failure to Indemnify Necessary Business Expenses); (6) Cal. Lab. Code §§ 201–03 (Failure to Timely Pay Final Wages at Termination); (7) Cal. Lab. Code § 226 (Failure to Provide Accurate Itemized Wage Statements); and (8) Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Unfair Business Practices). *See generally* Compl. After granting the parties' Stipulation to Dismiss Causes of Action Without Prejudice, Dkt. 26, only two claims remain: (1) Failure to Indemnify Necessary Business Expenses (Cal. Lab. Code § 2802); and (2) Unfair Business Practices (Bus. & Prof. Code §§ 17200, *et seq*.). *See* Dkt 27.

Defendant removed the action to federal court on April 17, 2024. Dkt. 1

---

[1] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers that appear within the documents natively.

2

("NOR"). In the Notice of Removal, Defendant argues this court has jurisdiction over this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. *Id.* ¶ 18. Defendant further states (1) Plaintiff is a citizen of a different state than Defendant, (2) there are more than 100 members in Plaintiff's proposed class, and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *Id.* ¶¶ 20–48.

## DISCUSSION

### I. Legal Standard

A defendant may remove an action from state court to federal court if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441(a). CAFA provides federal subject matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (5)(B). "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (revealing a "strong preference" for interstate class actions to be heard in federal court).

The party seeking removal bears the burden of establishing federal subject matter jurisdiction under CAFA. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Where the amount in controversy is not apparent from the face of the complaint, the removing party "must prove by a preponderance of the evidence that the amount in controversy requirement [under CAFA] has been met." *Id.* While generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," where a plaintiff contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required …." *Dart Basin Operating Co. v. Owens,* 574 U.S. 81, 89 (2014). The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence

3

relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* When remand is sought, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 574 U.S. at 89.

## II. Analysis

As the parties do not contest CAFA's jurisdictional requirement of class numerosity, the two remaining disputes are (1) whether minimum diversity exists, and (2) whether Plaintiff's remaining claims exceed CAFA's $5 million amount in controversy requirement. *See* Mot. at 11–13; Opp'n at 12–28.

Plaintiff argues Defendant has not met its burden of establishing minimal diversity because "Defendant alleges only that Plaintiff is a resident of California" without alleging that Plaintiff is domiciled in California. Mot. at 11. Stating that Plaintiff is a resident of California is sufficient to establish minimal diversity. *See Garcia v. Williams Scotsman, Inc.*, Case No. 2:24-cv-02977-PSG (MRWx), 2024 WL 3811267, at *3 (C.D. Cal. Aug. 13, 2024) (finding that "minimal diversity exists as Plaintiff alleges that he resides in California"); *see also McEntire v. Kmart Corp.*, Case No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010) ("[W]hile residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship.").

Plaintiff also argues Defendant has failed to show the amount in controversy exceeds $5 million as required under CAFA. Mot. at 13.[2] Defendant supplied various

---

[2] To the extent Plaintiff argues the amount in controversy should be lowered due to the court's dismissal of certain claims, such argument is precluded by Ninth Circuit precedent. *Ibarra*, 775 F.3d at 1197 (the amount in controversy for purposes of

support for its calculations, including declarations. *See generally* Opp'n; Dkt. 4 ("Pontiff Decl."); *see also Yorba v. Gov't Emps. Ins. Co.*, Case No. 24-cv-00031-GPC-VET, 2024 WL 3442416, at *2 (S.D. Cal. 2024) ("[A] declaration from a knowledgeable employee along with allegations in the complaint can satisfy the defendant's burden, even without other evidence such as payroll or timekeeping records."). Specifically, Defendant estimates the amount in controversy is approximately $22,298,216. Opp'n at 10.

      The court finds Defendant has satisfied its burden, by a preponderance of the evidence, for the amount in controversy based on three of Plaintiff's claims—meal period premiums, rest break premiums, and waiting time penalties—which collectively exceed the $5 million threshold.

**A. Meal Period Premiums**

      Plaintiff alleges during the relevant time period "Defendant[] regularly failed to provide Plaintiff and the Class with [two] meal periods as required by California law." Compl. ¶ 51. Plaintiff further alleges Defendant "did not adequately inform Plaintiff and the Class of their right to take a meal period by the end of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of work." *Id.* ¶ 16. According to Plaintiff, Defendant's alleged failure to provide timely meal periods and pay meal period premiums was a "systematic, company-wide policy and practice …." *Id.* ¶ 4.

      Plaintiff does not dispute the number of shifts or the average rate of pay used in Defendant's calculations for the meal period claim. Mot. at 24. Plaintiff only

---

CAFA jurisdiction is calculated as of "the time of removal.") (cleaned up). For similar reasons, the court also rejects Plaintiff's argument that the preemption of certain claims would affect the amount in controversy. *See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("[J]ust because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense.").

5

disputes the violation rate used by arguing Defendant failed to apply a reasonable assumption to justify its theory of damages exposure. *Id.* Instead, Plaintiff claims the violation rate should be reduced from Defendant's assumption of 25% to 10%. *Id.* The court disagrees.

Plaintiff's allegation that Defendant's failure to pay meal premiums and provide timely meal periods was a "systematic" and "company-wide policy" justifies Defendant assuming, for purposes of the amount in controversy, that Defendant failed to provide meal periods 25% of the time (i.e., a violation rate of 25%). *See Johnson v. Bamia 2 LLC*, Case No. 2:22-cv-00548-KJM-AC, 2022 WL 2901579, at *3 (E.D. Cal. July 22, 2022) (Plaintiff's allegations that class members were "regularly denied" legally compliant breaks meant it was not unreasonable for defendants to assume a 40% violation rate); *Hull v. Mars Petcare US, Inc.*, Case No. 5:18-cv-01021-PSG (KKx), 2018 WL 3583051, at *4 (C.D. Cal. July 25, 2018) ("Courts in this district routinely find a 60% assumption reasonable where, as here, the alleged violations are based on a standard policy.") (collecting cases).

Accordingly, Plaintiff's allegations that Defendant engaged in systematic meal period violations because of a policy and practice justify Defendant assuming at least a 25% violation rate. Thus, for this claim, the court finds Defendant has put approximately $2,216,250.00 in controversy (281,250 [the putative class has worked at least 281,250 shifts that exceeded five (5) hours since March 11, 2020] x $31.52 [average rate of pay since March 11, 2020] x 25% [violation rate]). Opp'n at 20–21; *see also* Pontiff Decl. ¶¶ 8, 10.

**B. Rest Break Premiums**

In addition, Plaintiff alleges "Defendant[] failed to authorize Plaintiff and the Class to take rest breaks, regardless of whether employees worked more than 4 hours in a workday[,]" in violation of California law, which requires employers to "authorize and permit breaks of 10 uninterrupted minutes for each four hours of work or major fraction of four hours ...." Compl. ¶¶ 54-55. Plaintiff also alleges

6

1  "Defendant[] did not have adequate policies or practices permitting or authorizing rest
2  periods for Plaintiff and the Class, nor did Defendant[] have adequate policies or
3  practices regarding the timing of rest periods." *Id.* ¶ 17. Finally, Plaintiff alleges that
4  "[u]nder California law, Plaintiff and the Class are entitled to be paid one hour of
5  premium wages rate for each workday he or she was not provided with all required
6  rest break(s) plus interest thereon." *Id.* ¶ 56.

   Similar to the meal period premium, Plaintiff does not dispute the number of
shifts and the average rate of pay used in Defendant's calculation for the rest break
claim. Mot. at 24. Instead, Plaintiff alleges the violation rate should be reduced from
25% to 10%. *Id.* As with meal breaks, an assumption of a 25% violation rate is
reasonable when a plaintiff alleges the violations occur systematically, regularly, or
are the result of a policy and practice. *See Oda v. Gucci America, Inc.,* Case No. 2:14-
cv-7468-SVW (JPRx), 2015 WL 93335, at *4–5 (C.D. Cal. Jan. 7, 2015) (defendant's
assumption of 50% violation rate was reasonable where plaintiff's complaint alleged
defendant maintained a policy or practice of not paying meal or rest premiums and not
all rest periods were given timely). Thus, for this claim, the court finds Defendant has
put approximately $2,233,916 in controversy (283,492 [the putative class has worked
at least 283,492 shifts that exceeded 3.5 hours since March 11, 2020] x $31.52
[average rate of pay since March 11, 2020] x 25% [violation rate]). Opp'n at 20–21;
Pontiff Decl. ¶¶ 8, 11.

### C. Waiting Time Penalties

Finally, Plaintiff alleges Defendant is liable for waiting time penalties. Compl.
¶¶ 61–67. Plaintiff contends Defendant's estimated violation rate for waiting time
penalties should be reduced from 100% to 25%. Mot. at 27. Even adopting Plaintiff's
reasoning, the new waiting time penalties alone amount to approximately $1,349,908
($5,399,635.05 [Defendant's estimated waiting time penalties] x 25% [violation rate]).
*Id.* Collectively, the three claims (meal period premiums, rest break premiums, and
waiting time penalties) exceed $5 million.

7

The total amount in controversy for these three claims alone is approximately $5,800,075. Accordingly, the court concludes Defendant has met its burden to establish subject matter jurisdiction under CAFA.[3] *See Ibarra*, 775 F.3d at 1197 (the court is to test whether CAFA's requirements are met by a preponderance of the evidence by considering "the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure.").

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's Motion.

IT IS SO ORDERED.

Dated: August 4, 2025

FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[3] Because these three claims alone would be sufficient to meet the amount in controversy, the court need not consider Plaintiff's remaining claims.